Exhibit 1

BD.SUP.'18DEC21AM11:36
**HAND-DELIVERED**

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
County of Santa Clara and Santa Clara County Board of Supervisors

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Board of Trustees of Leland Stanford Junior University

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

E-FILED
12/20/2018 10:05 AM
Clerk of Court
Superior Court of CA,
County of Santa Clara
18CV339813
Reviewed By: D Harris
Envelope: 2297261

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* Santa Clara County Superior Court

**CASE NUMBER:**
*(Número del Caso):* 18CV339813

191 N. First Street
San Jose, CA 95113

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Geoffrey Robinson, Perkins Coie LLP, 505 Howard Street, Suite 1000, San Francisco, CA 94105

DATE: 12/20/2018 10:05 AM   Clerk of Court    Clerk, by   D Harris   , Deputy
*(Fecha)*                                      *(Secretario)*         *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010),*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* County of Santa Clara

under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☑ other *(specify):* CCP 416.50 (Service on Public Agency)
4. ☑ by personal delivery on *(date):*

Board # 18-309
CC: ☑ 1 to County Counsel
    ☑ to ESA Insurance
Date/Initials: 12/21/18 MA

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): Geoffrey Robinson, Esq. (SBN 112997) Perkins Coie LLP 505 Howard Street, Suite 1000 San Francisco, CA 94105 TELEPHONE NO.: (415) 344-7000   FAX NO.: (415) 344-7050 ATTORNEY FOR (Name): Board of Trustees of Leland Stanford Junior University | FOR COURT USE ONLY<br><br>Electronically filed by Superior Court of CA, County of Santa Clara, on 12/20/2018 10:05 AM Reviewed By:D Harris Case #18CV339813 Env #2297261 |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 191 North First Street
MAILING ADDRESS: same as street address
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: Downtown Superior Court

CASE NAME:
Board of Trustees of Leland Stanford University v. County of Santa Clara

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 18CV339813 |
|---|---|---|
| ✓ Unlimited  ☐ Limited (Amount (Amount demanded demanded is exceeds $25,000) $25,000 or less) | ☐ Counter  ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
✓ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is  ✓ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.☐ monetary  b.✓ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action (specify): Two: (1) Equal Protection; (2) Declaratory Relief
5. This case ☐ is  ✓ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: December 19, 2018
Geoffrey Robinson
(TYPE OR PRINT NAME)                                  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in Item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

18CV339813
Santa Clara – Civil

D Harris

**Electronically Filed**
**by Superior Court of CA,**
**County of Santa Clara,**
**on 12/20/2018 10:05 AM**
**Reviewed By: D Harris**
**Case #18CV339813**
**Envelope: 2297261**

PERKINS COIE LLP
Geoffrey L. Robinson, Bar No. 112997
GRobinson@perkinscoie.com
Barbara J. Schussman, Bar No. 142352
BSchussman@perkinscoie.com
Marc R. Bruner, Bar No. 212344
MBruner@perkinscoie.com
Alan H. Murphy, Bar No. 262844
AMurphy@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105-3204
Telephone: 415.344.7000
Facsimile: 415.344.7050

Attorneys for Plaintiff and Petitioner
BOARD OF TRUSTEES OF LELAND
STANFORD JUNIOR UNIVERSITY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA CLARA

BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY,

Plaintiff and Petitioner,

v.

COUNTY OF SANTA CLARA and SANTA CLARA COUNTY BOARD OF SUPERVISORS,

Defendants and Respondents.

No. 18CV339813

**VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

(C.C.P. §§ 1085; 1060)

-1-

## NATURE OF ACTION

1. Petitioner and plaintiff, the Board of Trustees of Leland Stanford Junior University ("Stanford" or "Stanford University"), brings this petition for a writ of mandate and action for declaratory and injunctive relief against the County of Santa Clara ("County") and its Board of Supervisors to challenge the County's Ordinance No. NS-1200.368 ("Ordinance") adopted on September 25, 2018. The Ordinance is codified in the Santa Clara County Ordinance Code, at Title C, Appendix I (Zoning), Article 4, Chapter 4.20, Section 4.20.130.

2. The Ordinance – which requires that a percentage of housing units constructed by Stanford University within the unincorporated area of the County satisfy affordable housing specifications – is one of two County ordinances that impose affordable housing requirements *exclusively* on Stanford. (The second County ordinance, which imposes an affordable housing impact fee on Stanford's academic development, will be the subject of a separate proceeding and is not being challenged as part of this action.)

3. The County has determined that there is a severe shortage of affordable housing throughout the County and the region. The County has explained that the supply of affordable housing has been a growing issue of regional concern since the 1960s, as the area has changed from an agricultural focus to a technology and employment center.

4. The County prepared a countywide study to examine the affordable housing impacts from development of new housing, which concluded that residential development throughout the unincorporated area of the County increases the demand for affordable housing.

5. Yet, through its Ordinance, the County has impermissibly targeted Stanford to bear the burden alone of addressing the countywide affordable housing problem, even though the County's own analyses rest on the premise that all new housing development under the County's land use jurisdiction contributes to this longstanding problem. The County has intentionally imposed affordable housing requirements only on Stanford's residential development, and not on any other similarly-situated residential development within the County's land use authority.

6. Stanford University provides hundreds of housing units that the County counts as affordable to very low- and low-income residents in fulfilling the County's Regional Housing Needs Allocation. It is irrational to single out Stanford University to require that it provide yet more income- and rent-restricted housing to address a countywide problem to which others also contribute. The Ordinance violates the Equal Protection clauses of the United States and California Constitutions and should therefore be set aside.

## INTRODUCTION

7. The County's Ordinance states that there is a severe shortage of affordable housing countywide and throughout the region. The Housing Element of the County's General Plan states that housing supply and affordability in the region have posed an issue of increasing importance since the earliest days of the region's transformation from the center of agricultural production known as the Valley of Heart's Delight, into the center of technology, innovation and employment known as Silicon Valley.

8. In 2015, the County initiated a countywide affordable housing study, with the stated purpose of collaborating with other local jurisdictions to assist in advancing a regional response. This effort led to a set of countywide nexus studies, based on the following two principles concerning development within the unincorporated area of the County (which represents the geographic area of the County's land use jurisdiction and authority): (a) all new residential development represents new households that consume goods and services, thereby generating new jobs, including lower wage jobs that create an increased demand for affordable housing; and (b) all new commercial and industrial development generates new jobs, including lower wage jobs that similarly create an increased demand for affordable housing.

9. In presenting the completed studies to the Board of Supervisors in 2017, County staff indicated that if the County were to adopt a countywide affordable housing ordinance, Stanford University would be included in the ordinance's coverage. County staff further indicated that, if no countywide ordinance was adopted, affordable housing requirements for Stanford University would be addressed as part of the County's decision-making on the long-term development application that Stanford had submitted to the County for its campus in 2016.

-3-

10. The County and its Board of Supervisors did not proceed to propose or adopt any countywide ordinance establishing affordable housing requirements. Instead, on September 25, 2018, the County adopted two ordinances that imposed an extensive set of affordable housing requirements *only* on Stanford University, and not on any other residential or non-residential land owner within the unincorporated area of the County.

11. As the courts have observed, when local legislation is generally applicable to a large class of landowners, it typically is subject to the political controls and constraints of the democratic process. By contrast, the courts have explained that when land use requirements are imposed only a single landowner, they are more likely to elude these constraints and pose an increased risk for abuse.

12. The first of the County's two Stanford-only ordinances – which is the Ordinance that Stanford University challenges in this action – exclusively targets Stanford's new housing development. The Ordinance requires 16% of the new housing units constructed on Stanford land within the County's unincorporated area to meet specified affordability standards. No other new housing under the County's land use jurisdiction is required to provide any percentage of affordable housing, even though there are similarly situated properties to which the Ordinance does not apply that could be developed with new housing, which according to the County's studies would generate increased demand for affordable housing.

13. The second County ordinance exclusively targets Stanford University's academic development. This ordinance requires Stanford to pay an affordable housing impact fee of $68.50 for each new net square foot of academic space that Stanford builds on its campus after July 1, 2020. No other commercial, retail, office, industrial or other non-residential development under the County's jurisdiction is required to pay any affordable housing impact fee, even though the County's studies show that Stanford University's academic development generates a lower demand for affordable housing per square foot as compared to commercial development by others.

14. The County's affordable housing impact fee ordinance is subject to distinct protest and challenge procedures and timelines under the California Mitigation Fee Act and therefore is

-4-

not being challenged as part of this action, as the time to challenge the fee has not commenced. *See Ehrlich v. City of Culver City*, 12 Cal. 4th 854, 866 (1996) ("[T]he Legislature intended to require all protests to a development fee that challenge the sufficiency of its relationship to the effects attributable to a development project – regardless of the legal underpinnings of the protest – to be channeled through the administrative procedures mandated by the [Mitigation Fee] Act.").

15. During the period from 2000 to 2018, Stanford University provided over $26 million in affordable housing funds to the County. During this period, Stanford also constructed over 800 affordable housing units in the County's unincorporated area. The County has taken credit for these housing units as affordable to low- and very low-income households in the Housing Element of its General Plan for purposes of fulfilling the County's own legal obligations to plan for and approve affordable housing, pursuant to the requirements under State law administered by the California Department of Housing and Community Development.

16. The County's Ordinance impermissibly singles out Stanford University. Through its ordinance, the County has intentionally imposed affordable housing requirements exclusively on housing development constructed by Stanford. By contrast, the County has not imposed affordable housing requirements on any other new housing under the County's land use authority, even though the County's residential nexus study rests on the premise that all such housing development contributes to the countywide affordable housing problem that the County has identified. The County has no rational basis for imposing affordable housing requirements only on Stanford University, and not on other residential development in the unincorporated area of the County, which according to the County's own nexus studies generates demand for affordable housing.

17. The County's Ordinance violates the Equal Protection clauses of the United States and California Constitutions. Stanford University seeks a writ of mandate to set aside the Ordinance, a judicial declaration that the Ordinance is invalid and unlawful, injunctive relief to enjoin the County from enforcing the Ordinance, and such other relief that the Court deems proper.

## PARTIES

18. Petitioner and plaintiff, the Board of Trustees of Leland Stanford Junior University, is a private non-profit university founded in 1891. Stanford University owns over 4,000 acres of land within the unincorporated area of Santa Clara County, including the university campus. Stanford University also owns lands located in various other local jurisdictions, including the cities of Palo Alto, Menlo Park, Redwood City, Woodside, and Portola Valley and the unincorporated area of San Mateo County.

19. Respondent and defendant County of Santa Clara is a unit of government organized under the laws of the State of California.

20. Respondent and defendant Santa Clara County Board of Supervisors is the governing body of the County. Respondents and defendants are hereinafter collectively referred to as "defendants."

## FACTUAL ALLEGATIONS

21. In December 2000, the County approved the 2000 General Use Permit, which authorized Stanford University to build on its campus approximately 2,035,500 net new square feet of academic space and 3,018 net new housing units and beds for university students, faculty and staff. In December 2000, the County also approved the Stanford University Community Plan, which governs the development of the Stanford University campus.

22. Since the approval of the 2000 General Use Permit, Stanford University has paid more than $26 million to the County in affordable housing funds. The completion of development by Stanford University as authorized under the 2000 General Use Permit is anticipated to generate an additional $10-11 million in affordable housing funds for the County.

23. In addition to these affordable housing funds, Stanford University constructed a total of 1,011 new housing units in the County pursuant to the 2000 General Use Permit. This figure does not include dormitory-style undergraduate beds on the Stanford University campus.

24. Of the 1,011 non-dormitory housing units that Stanford has constructed in the County pursuant to the 2000 General Use Permit, 816 units (or over 80%) have been classified by

the County as meeting the rental price standards for affordability for low-income and very low-income households. The Housing Element of the County's General Plan has relied on these 816 affordable housing units constructed by Stanford University to fulfill the County's own legal obligations to provide affordable housing pursuant to the requirements of State law as administered by the California Department of Housing and Community Development.

25. In addition to the 816 affordable housing units constructed by Stanford University that the County has relied on in its Housing Element to meet its affordable housing obligations under State law, Stanford's Escondido Village Graduate Residences project, approved by the County in March 2016, is anticipated to add another 1,300 affordable housing units within the unincorporated area of the County.

26. In addition to this affordable housing totaling more 2,100 housing units, the Housing Element of the County's General Plan acknowledges that while the many dormitory-style student beds on the Stanford University campus are not officially counted as "housing units" for purposes of determining affordability, these student beds "nonetheless make an important contribution to the housing supply at Stanford University, and reduce potential pressures on the housing demand in nearby communities."

27. In November 2015, the County approved a contract for its consultant, Keyser Marston Associates ("KMA"), to complete a set of countywide affordable housing nexus studies. This effort was designed to assist the County in advancing a regional response to affordable housing needs as part of a coordinated effort involving twelve local jurisdictions in the region.

28. In November 2016, Stanford University submitted an application to the County for a new General Use Permit for development of the Stanford University campus ("2018 General Use Permit"). This application seeks to modify the 2000 General Use Permit to allow for the development of an additional 2,275,000 net new square feet of academic space and an additional 3,150 student beds and housing units over an approximately 17-year build-out horizon. As part of its application for the 2018 General Use Permit, Stanford University committed to make payments into a County-maintained affordable housing fund, consistent with the payments it has been making since the issuance of the 2000 General Use Permit.

29. In December 2016, the County's consultant KMA completed two county-wide affordable housing studies: (i) a "Residential Nexus Analysis" to evaluate the linkage between the development of new residential units in the unincorporated County and the need for additional affordable housing; and (ii) a "Non-Residential Nexus Analysis" to evaluate the linkage between the development of new commercial and industrial building space in the unincorporated County and the need for affordable housing.

30. The County's Residential Nexus Analysis is based on the express premise that new residential development in the unincorporated area of the County represents new households, which in turn represent new income leading to the consumption of goods and services, and that this consumption will generate new jobs, including lower-wage jobs that will create increased demands for affordable housing.

31. The County's Non-Residential Nexus Analysis similarly is based on the express premise that new commercial and industrial development in the unincorporated area of the County will generate new jobs, including lower-wage jobs that will create increased demands for affordable housing.

32. The County's nexus studies did not include an assessment of affordable housing requirements for Stanford University. In a June 20, 2017 staff report presented to the Board of Supervisors, County staff proposed to conduct an analysis of the affordable housing requirements that would apply to Stanford University's future development "as part of the processing of the 2018 General Use Permit." The staff report acknowledged the possibility that, if the County were to approve a countywide affordable housing ordinance, Stanford University would be subject to that ordinance. However, the staff report also stated that "[i]f a countywide fee ordinance was not adopted, a Stanford University impact fee would be considered in the context of the General Use Permit application." The staff report did not mention the possibility of a stand-alone ordinance specific to Stanford University.

33. The County has not adopted a countywide affordable housing ordinance and there currently is no proposed countywide affordable housing ordinance under consideration for adoption by the Board of Supervisors.

-8-

34. Instead, on September 25, 2018, the County adopted the Ordinance together with an affordable housing fee ordinance, both of which expressly impose affordable housing requirements only on Stanford University land.

35. Despite the prior indications by County staff, the requirements imposed on Stanford were expressly based on the amount of development specified in Stanford University's 2018 General Use Permit application, but these requirements were imposed by way of a Stanford-only ordinance process that was decided in advance of any other County decision on Stanford's development application.

36. The two County ordinances impose affordable housing requirements on Stanford University's residential development and its academic development, respectively, without imposing any affordable housing requirements on any other residential or non-residential development within the unincorporated area of the County. Specifically, the two County ordinances apply only to development by Stanford University within the area covered by the Stanford University Community Plan.

37. The first Stanford-only ordinance is the County's "inclusionary" housing Ordinance, which requires that 16% of the residential units that are built by Stanford University in the unincorporated County for its faculty and staff meet specified affordable housing standards. See Ordinance No. NS-1200.368, which is codified in the Santa Clara County Ordinance Code, Title C, Appendix I (Zoning), Article 4, Chapter 4.20, Section 4.20.130.

38. The second Stanford-only ordinance that the County adopted on September 25, 2018, requires Stanford University to pay an affordable housing impact fee of $68.50 for each net new square foot of academic space that Stanford University develops on its campus after July 1, 2020. See County Ordinance No. NS-300.929; County Resolution No. BOS-2018-104. As with the County's inclusionary housing Ordinance directed at Stanford University's residential development, this impact fee ordinance applies only to non-residential development by Stanford University. But according to the County's own analysis, general office development generates a much higher affordable housing demand per square foot than Stanford University's academic development. This is because academic uses such as lecture and concert halls, museums,

-9-

academic farms, athletic venues and gymnasia have a relatively low employment density, which means such uses necessitate fewer employees per square foot as compared to other non-residential uses. Specifically, the County's analysis calculates that Stanford University's academic uses generate only about 63% the affordable housing demand per square foot as compared to office uses in the County.

39. The impact fee ordinance is not being challenged as part of this action, as a lawsuit challenging the impact fee ordinance is subject to separate timing and filing requirements under the Mitigation Fee Act, Govt. Code §§ 60000 *et seq.*

40. As the courts have observed, when local legislation is generally applicable to a large class of landowners, it typically is subject to the constraints of the democratic process, such that inappropriate or unjust requirements imposed throughout the local jurisdiction are susceptible to widespread political opposition. In contrast, local land use requirements imposed *only* on a single landowner or development project are more likely to evade systematic assessment and escape political controls, and thus present an enhanced potential for abuse.

41. As described above, the County through its inclusionary Ordinance intentionally has imposed affordable housing requirements only on residential development by Stanford University. The County has neither adopted nor proposed any affordable housing rules that would apply to any other residential development in the unincorporated area of the County.

<u>FIRST CAUSE OF ACTION</u>
**(Equal Protection – U.S. Const., Amend. XIV & Calif. Const. Art. 1, § 7(a))**

42. Stanford University realleges and incorporates the allegations in the foregoing paragraphs.

43. The Equal Protection clauses of the United States and California Constitutions protect against local legislation that irrationally singles out one entity to bear the burden of addressing its contribution to a regional problem.

44. The County has stated that the supply and affordability of housing countywide and in the region is a longstanding problem that has been growing in importance since the early 1960s, as the area has been transformed from a center of agricultural production into a center for

technology, innovation and employment. It is arbitrary and irrational for the County intentionally to single out Stanford University to bear the burden of addressing its contribution to this problem alone, without imposing any affordable housing requirements on other development of new housing that is subject to the County's land use jurisdiction and authority.

45. The County's own affordable housing nexus studies are based on the key premise that *all* residential development within the unincorporated area of the County generates an increased demand for affordable housing. Yet, the County has impermissibly imposed inclusionary affordable housing requirements *only* on Stanford University and not on others who contribute to the countywide affordable housing shortage.

46. Based on all of the evidence in the administrative record of the County's proceedings in this matter, because the Ordinance, by design, exclusively targets Stanford University, and because it is irrational to treat Stanford University's residential development differently from other similarly situated residential development that according to the County's own nexus studies generates an increased demand for affordable housing, the Ordinance violates federal and state principles of Equal Protection.

## SECOND CAUSE OF ACTION
### (Declaratory Relief – C.C.P. § 1060)

47. Stanford University realleges and incorporates the allegations in the foregoing paragraphs.

48. An actual controversy has arisen and now exists between the parties, in that Stanford University contends that the Ordinance is invalid and unlawful for the reasons described above and is informed and believes and thereon alleges that defendants deny all such allegations and contend that the Ordinance is, in all respects, valid and lawful.

49. A judicial declaration as to the validity of the Ordinance is therefore necessary and appropriate in order to determine the rights and obligations of the parties with respect to the Ordinance.

## PRAYER FOR RELIEF

WHEREFORE, Stanford University requests the Court to grant the following relief:

a. Issue an alternative writ of mandate or order to show cause and, after a hearing, a peremptory writ of mandate vacating and setting aside the Ordinance as invalid and unlawful and commanding defendants immediately to cease enforcing the Ordinance in its entirety;

b. Declare that the Ordinance violates the Equal Protection clauses of the Fourteenth Amendment of the United States Constitution and Article 1, section 7(a) of the California Constitution;

c. Enjoin the defendants, their agents, employees, and all other persons in active concert or participation with them from enforcing the Ordinance;

d. Award Stanford University its reasonable attorneys' fees and costs incurred in this action pursuant to California Code of Civil Procedure § 1021.5, 42 U.S.C. § 1988, and other applicable law.

e. Order such other relief as the Court deems proper.

DATED: December 20, 2018

PERKINS COIE LLP

By: /s/ Geoffrey L. Robinson
Geoffrey L. Robinson, Bar No. 112997
GRobinson@perkinscoie.com

Attorneys for Plaintiff and Petitioner
BOARD OF TRUSTEES OF LELAND
STANFORD JUNIOR UNIVERSITY

## VERIFICATION

I, Robert Reidy, declare as follows:

I am the Vice President of Land, Buildings and Real Estate at Stanford University, the plaintiff and petitioner in this action. I am authorized to make this verification on Stanford University's behalf. I have read the foregoing Verified Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief and am familiar with its contents. I am informed and believe and thereon allege that the matters stated therein are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this _18_ day of December, 2018, in _Palo Alto_, California.

Robert Reidy
Vice President of Land, Buildings and Real Estate
Stanford University